# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

**In Re:**

**Antonio H. Azevedo,**

           **Debtor.**

**Bankruptcy Case No. 11-41561-JDP**

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

    David Gadd, WORST, FITZGERALD & STOVER, PLLC., Twin Falls, Idaho, Attorney for Standlee Hay Co.

    Daniel Green, RACINE, OLSON, NYE, BUDGE & BAILEY, CHARTERED, Pocatello, Idaho, Attorney for Gary Rainsdon Trustee.

*Introduction*

    The Court must decide whether certain post-bankruptcy transactions between Debtor Antonio Helio Azevedo ("Debtor") and Standlee Hay Company, Inc. ("Creditor") were in the ordinary course of business and

MEMORANDUM OF DECISION – 1

thus qualify as an administrative expense under § 503(b).[1]  After taking the issue under advisement, and having considered the parties' submissions and arguments, the Court concludes that an issue of fact remains which will require an evidentiary hearing to resolve.

*Facts*

On September 20, 2011, Debtor, a dairy farmer, filed a petition for relief under chapter 12 of the Bankruptcy Code.  Dkt. No. 1.  When no plan could be confirmed, at Debtor's request, the case was converted to chapter 7 on May 11, 2012.  Dkt. Nos. 132 and 133.

On May 17, 2012, Creditor filed an application claiming that amounts owed by Debtor for the cattle feed Creditor delivered to Debtor during the pendency of the chapter 12 case should be allowed as an administrative expense with priority under § 503(b).  Dkt. No. 151.  The amount of Creditor's claim is $463,363.07, and the debt arose from transactions with Debtor occurring from January 6, 2012 through May 2,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 2

2012.

The chapter 7 trustee, Gary Rainsdon ("Trustee") initially objected to Creditor's application for administrative expense on May 31, 2012, arguing that it was unclear whether these transactions should be considered administrative expenses. Dkt. No. 158. Then, on July 6, 2012, Trustee and Creditor filed a stipulation indicating that, based upon Trustee's review of additional documentation and information, an order could be entered granting Creditor's application. Dkt. No. 200.

Notwithstanding the stipulation, on July 10, 2012, the Court conducted a hearing concerning Creditor's application. Dkt. No. 202. After hearing from counsel for Creditor and Trustee, the Court directed Creditor to file an affidavit with respect to its dealings with Debtor to demonstrate that the subject transactions were conducted in the ordinary course of business.

On July 18, 2012, Trustee filed a "renewed objection" to Creditor's application for administrative expense. Dkt. No. 210. In this filing, Trustee stated that he now believed, despite his earlier stipulation, that Creditor's

MEMORANDUM OF DECISION – 3

transactions with Debtor were not in the ordinary course as contemplated by § 364(a).  *Id.*  On August 1, 2012, Creditor filed the affidavit of Dusty Standlee, the Creditor's principal, in support of the application.  Dkt. No. 216.  In the affidavit, Mr. Standlee opined that it is common in the industry, and according to his business's practice, to allow customers to incur outstanding balances of over $500,000.00 for purchase of feed.  *Affidavit of Mr. Standlee*, Dkt. No. 216, at ¶ 7.  Mr. Standlee also stated that he was unaware that Debtor had filed for bankruptcy relief until May 1, 2012.  *Id.* at ¶ 11.

    On August 9, 2012, Trustee filed a brief in opposition to the application, along with his affidavit describing the new information he had obtained about the transactions between Debtor and Creditor for the period of April 13, 2011 through May 8, 2011.  Dkt. Nos. 217 and 218.  Trustee argued in the brief that the dealings between Creditor and Debtor prepetition were significantly different than the parties' dealings postpetition.  Dkt. No. 217 at 5.  For instance, Trustee alleged, Debtor paid Creditor about three times faster prepetition after a delivery of feed than he

MEMORANDUM OF DECISION – 4

paid for postpetition deliveries. *Id.* Trustee further alleged that Creditor allowed the outstanding balance owed to it by Debtor to grow during the bankruptcy case to over four times that amount Debtor owed prepetition without full payment. *Id.*

Trustee also filed an affidavit of Allen Young, an experienced dairy farmer. Dkt. No. 219. Mr. Young represented that, in his experience, it is not the ordinary course of business in the industry to buy and sell feed on credit. *Id.* at ¶ 4. Further, Young averred, that if feed products are sold on credit, the transaction is usually between parties who have had many prior dealings and certainly, even between those parties, no more than thirty days elapses before payment. *Id.* Mr. Young also stated that if a delinquent account goes beyond sixty days, it would be "very unusual and not ordinary" for a seller to continue to supply its delinquent buyer in the livestock feed industry. *Id.* at ¶ 6.

### *Analysis and Disposition*

A. Section 503(b)(1)(A)'s Actual and Necessary Costs Test

The Bankruptcy Code allows for payment of administrative

MEMORANDUM OF DECISION – 5

expenses that are "the actual, necessary costs and expenses of preserving the estate." § 503(b)(1)(A). The Supreme Court has interpreted "preservation of the estate" to include the continuation of the business of the estate. *Reading Co. v. Brown*, 391 U.S. 471, 475 (1968). In this respect, § 503(b)(1)(A) serves an important interest because it provides an incentive to creditors to continue to deal with a debtor in bankruptcy so that the debtor may continue its business and thus benefit the estate. 4 COLLIER ON BANKRUPTCY, ¶ 503.06[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Under section 503(b)(1)(A), courts apply a two part test to determine whether a claim is an "actual and necessary expense" and thus qualifies as an administrative expense. *Id.* at [3]. A court must determine: (1) whether the expense arose from a transaction with the estate; and (2) the transaction must have directly and substantially benefitted the estate. *Abercrombie v. Hayden Corp. (In re Abercrombie)*, 139 F.3d 755, 757 (9th Cir. 1998); *Microsoft Corp. v. DAK Industries, Inc. (In re Dak Industries, Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995); *Hopkins v. Idaho State University Credit Union, et al. (In re*

MEMORANDUM OF DECISION – 6

*Herter)*, 464 B.R. 22, 32 (Bankr. D. Idaho 2011).  The bankruptcy court in making this determination has wide discretion.  *In re DAK Industries, Inc.*, 66 F.3d at 1094.  However, the bankruptcy court should narrowly construe this test.  *Id.*

### B. Section 364(a) and the Ordinary Course of Business

Section 364(a) provides that "[i]f the [debtor] is authorized to operate the business of the debtor under section . . . 1203 . . . the [debtor] may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense."  In other words, if an entity supplies goods on credit to a debtor operating a business in bankruptcy, and if the transaction was "in the ordinary course of business" the debt arising from the transaction constitutes an administrative expense.  If the debt incurred or credit obtained by the debtor is not in the ordinary course of business, it is not automatically recognized as an administrative expense.[2]

---

[2] Of course, the supplier and debtor, in advance of doing the deal, may ask the Court, after notice and hearing, to bless the transaction under § 364(b) (providing that the court may authorize a debtor to incur unsecured debt "other

MEMORANDUM OF DECISION – 7

As can be seen, then, whether an unsecured credit transaction with an operating debtor will enjoy administrative expense status is tied to whether the transaction is in the ordinary course of business. Two tests have been employed by the Ninth Circuit in determining whether a transaction is in the ordinary course. *See Aalfs v. Wirum (In re Straightline Investments, Inc.)*, 525 F.3d 870, 879 (9th Cir. 2008); *Burlington Northern R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 704 (9th Cir. 1988); *Crawforth v. Wheeler (In re Wheeler)*, 444 B.R. 598, 612 (Bankr. D. Idaho 2011). Generally, both tests must be satisfied for a transaction to qualify as ordinary course. *In re Straightline Investments, Inc.*, 525 F.3d at 879.

### i. The Vertical Dimensions Test

The first test is the "vertical dimensions, or creditor's expectation, test." *Id*. This test examines the subject transaction from the point of view

---

than under subsection (a)" allowable under § 503(b)(1) as an administrative expense). This procedure provides a fail-safe technique to ensure that the creditor's rights will be protected in the bankruptcy case without regard to whether the transaction is in the ordinary course of business.

MEMORANDUM OF DECISION – 8

of a hypothetical creditor and asks whether the debtor's transaction "subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit." *In re Dant & Russell, Inc.*, 853 F.2d at 705. In applying this test, courts compare the debtor's prepetition business practices to its postpetition business practices. *In re Straightline Investments, Inc.*, 525 F.3d at 879. But "changes between prepetition and postpetition business activity alone are not per se evidence of extraordinariness." *The Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 617 (Bankr. S.D.N.Y. 1986). In applying this test one court stated that "some transactions either by their size, nature or both are not within the day-to-day operations of a business and therefore extraordinary." *Johnston v. First Street Companies (In re Waterfront Companies, Inc.)*, 56 B.R. 31 (Bankr. D. Minn. 1985). The primary focus under the vertical dimensions test is the types of transactions the debtor is reasonably likely to enter into in the course of its business. *Armstrong World Industries, Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 394 (S.D.N.Y. 1983)

MEMORANDUM OF DECISION – 9

*ii. The Horizontal Dimensions Test*

The other test is referred to as the "horizontal dimensions test." *Straightline Investments, Inc.*, 525 F.3d at 880-81. This test looks at similarly situated businesses and determines whether the transaction is one in which those other businesses would be involved. *Id* at 881. This test gauges whether either the creditor or debtor did something to "gain an advantage over the other creditors." *Id.* (quoting *In re Dant & Russell, Inc.*, 853 F.2d at 704).

C. Application of the Ordinary Course of Business Tests

An evidentiary hearing is required to determine whether these transactions were in the ordinary course of business. It appears undisputed that Creditor's transactions with Debtor occurred postpetition and allowed Debtor to continue his business as a dairy. These facts would seem to satisfy the "actual and necessary" expense requirement of § 503(b)(1)(A). However, because these transactions occurred during the bankruptcy case, § 364(a) is implicated, and Creditor must show that these transactions were entered into in the ordinary course of business. In order

MEMORANDUM OF DECISION – 10

to determine this, the Court must apply the vertical and horizontal dimensions tests described in the case law discussed above.

A question of fact exists under the vertical dimensions test. First, while it may be obvious to a hypothetical creditor that a dairy business may enter into credit transactions to procure feed for its cows, the Court must also consider the "size and nature" of the credit and payment transactions between the parties to decide if they were in the ordinary course of business. As Trustee argues, without more proof, it is not clear whether this amount and the extent of the payments by Debtor to Creditor during the bankruptcy case were consistent with the prepetition experience of the parties.

There is also a remaining question of fact with respect to the horizontal dimensions test. Creditor claims its dealings with Debtor are similar to those with its other customers. *Affidavit of Mr. Standlee,* Dkt. No. 216, at ¶¶ 6. 7. However, Mr. Young represented that allowing a feed supplier customer to incur balances of this size without payment is, in his opinion, outside the ordinary course of business in the industry. *Affidavit*

MEMORANDUM OF DECISION – 11

*of Mr. Young*, Dkt. No. 219, at ¶ 6.

### *Conclusion*

A separate order will be entered scheduling a hearing at which the parties may present evidence concerning whether Creditor's post-bankruptcy claims against Debtor arose in the ordinary course of business as required by § 364(a).

Dated:  August 27, 2012

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 12